**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| Bridgestone Americas Tire Operations, LLC, | Civil Action No.: 23-cv-_____ |
| Plaintiff, | **1:23-cv-00230-SAL** |
| vs. | JURY TRIAL DEMANDED |
| Selective Way Insurance Company, | |
| Defendant. | |

## **COMPLAINT**

Plaintiff Bridgestone Americas Tire Operations, LLC ("BATO") hereby files its Complaint in this matter and alleges as follows:

1.      Plaintiff Bridgestone Americas Tire Operations, Inc. is a Delaware limited liability company, with a principal place of business in Nashville, Tennessee.

2.      Upon information and belief, Defendant Selective Way Insurance Company is a New Jersey corporation with a principal place of business in Branchville, New Jersey.

3.      There is complete diversity of citizenship between Plaintiff and Defendant.  The amount in controversy in this matter exceeds $75,000.00, exclusive of costs and attorney's fees.  Therefore, subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because  a substantial part of the events or omissions giving rise to the claim occurred in this district.

5.      This Court has personal jurisdiction and subject matter jurisdiction over all parties, claims, and issues in this action.

6.      Plaintiff demands a jury trial as to all claims and issues properly triable to a jury.

7.      Plaintiff BATO is a named defendant in a personal injury lawsuit in the Court of Common Pleas of Aiken County, South Carolina, styled *David Hobbs, individually and as Personal Representative of the Estate of Andrew Hobbs v. WRDV, Inc., d/b/a Labor Finders, et*

*al.*, No. 2020-CP-02-02353 ("Underlying Lawsuit").

8.      The claims in the Underlying Lawsuit arise out of fatal injuries sustained by Andrew Hobbs ("Decedent") on June 23, 2020 in an accident that occurred while Decedent was performing work at BATO's plant located at #1 Bridgestone Parkway in Graniteville, South Carolina.

9.      At the time of the accident, Decedent was performing work for D/C Power Products, Inc. ("D/C Power"), which is in the business of, *inter alia*, material handling. D/C Power is also a named defendant in the Underlying Lawsuit.

10.      D/C Power was an independent contractor hired by BATO, pursuant to BATO's Purchase Order 5000162688 ("Purchase Order"), dated June 19, 2020.

11.      Under its Agreement with BATO, D/C Power agreed to unload shelving from sea containers located at BATO's plant located in Graniteville, South Carolina (the "Project").

12.      In connection with the Project, D/C Power planned to unload the shelving by use of a telehandler.

13.      On the date of the accident, the telehandler was operated by Devion Garrison, with Decedent serving as his spotter in performance of the Project.

14.      D/C Power hired Decedent and Mr. Garrison to perform this work, pursuant to a separate agreement that D/C Power had with WRDV Inc. or Labor Finders International, Inc. (collectively "Labor Finders").   BATO had no contractual or other relationship with Labor Finders.  BATO had no direct negotiations or correspondence with WRDV Inc. or Labor Finders concerning the Project.

15.      D/C Power represented to BATO that it would use experienced, qualified, trained, competent, and certified labor, including telehandler operators and spotters, for the Project.

16.      D/C Power represented to BATO that it was an appropriate contractor that was experienced, qualified, trained, and competent to perform the Project it was contracted to do.

17.      At all times, BATO reasonably believed that D/C Power was an appropriate contractor that was experienced, qualified, trained, competent, and certified to perform the

- 2 -

Project it was contracted to do.

18.     D/C Power owed BATO a duty of reasonable care in connection with its work on the Project and its retention of labor for the performance of such work.

19.     The subject Purchase Order references Terms and Conditions and provides an internet link/website address for the location of such Terms and Conditions: https://www.bridgestoneamericas.com/en/newsroom/terms-and-conditions/2016/2016-terms-and-conditions.

20.     At that website address, BATO made its Standard Terms and Conditions available for D/C Power's review.

21.     Those Standard Terms and Conditions formed a binding and material part of BATO's agreement with D/C Power.

22.     BATO's Standard Terms and Conditions provided that D/C Power, its "Vendor," would defend and indemnify it from certain liabilities:

> Vendor shall protect, indemnify, reimburse, hold harmless and defend Bridgestone and its officers, directors, employees, workers, agents, servants, and invitees ("indemnified parties"), from and against all losses, costs, expenses (including reasonable attorneys' fees and other expenses of litigation, arbitration and investigation), damages, penalties, fines, demands, claims, suits and other liabilities, (collectively, "Liabilities") arising from or in connection with (i) the Deliverables; (ii) the presence of Vendor's employees, contractors, subcontractors or agents on Buyer's premises; (iii) Vendor's performance or nonperformance of its obligations under this Contract; or (iv) Vendor's or its employees', agents' or subcontractor's negligence or intentional misconduct, except to the extent caused by the negligence or intentional misconduct of Bridgestone or its employees. Vendor will reimburse each indemnified party for all Liabilities as they are incurred in investigating, preparing, pursuing or defending any claim, legal action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any indemnified party is a party thereto.

(*See* Standard Terms and Conditions ¶ 21(a)).

23.     Additionally, BATO's Standard Terms and Conditions, which formed part of its Agreement with D/C Power, required that D/C Power provide proof of certain levels of liability insurance coverage.

24.     The Terms and Conditions also required that D/C Power name BATO as an

additional insured under those policies of insurance. (*See* BATO Terms and Conditions ¶ 22 ("All insurance required by this Contract other than worker's compensation insurance shall name Buyer as an additional insured or loss payee, as applicable.")).

25.     Pursuant to the requirements of its agreement with BATO, D/C Power provided BATO with a Certificate of Liability Insurance, which represented that BATO was an Additional Insured with respect to D/C Power's commercial general liability insurance coverage.

26.     D/C Power further represented that such liability insurance had been issued by Selective Way Insurance Company.

27.     In the Underlying Lawsuit, Plaintiff alleges that BATO was negligent in selecting D/C Power as a contractor for the project wherein Decedent was fatally injured.

28.     On November 9, 2021, BATO wrote to counsel for D/C Power, notifying D/C Power of Plaintiff's claims against it.

29.     In this correspondence, BATO demanded "that DC Power and/or its liability insurer fully defend and indemnify Bridgestone, and any involved employees, and hold them harmless from any Liabilities as contemplated in the Agreement with respect to the claims alleged by Mr. Hobbs."

30.     The correspondence further demanded "that DC Power and/or its liability insurer fully reimburse Bridgestone for all costs and expenses for its defense, including attorney fees and litigation expenses."

31.     On December 17, 2021, counsel for BATO followed up on BATO's tender of the claims against it to DC Power. On the same day, DC Power's attorney stated that he would follow up with his client and advise.

32.     To date, DC Power has not agreed to defend and indemnify BATO for the claims asserted against it in this lawsuit by Plaintiff relating to the death of Decedent.

33.     All of the allegations contained in paragraphs 8 through 32 hereinabove have been admitted by D/C Power; see *Defendant D/C Power Products, Inc.'s Reply to the Defendant Bridgestone Americas Tire Operations, LLC's Amended Answer to Second Amended Complaint*

{01228217.DOCX.2 }

*and Crossclaims Against Defendant D/C Power Products, Inc*., dated April 18, 2022 and filed in the Underlying Lawsuit.

34.     BATO's Standard Terms and Conditions provided that D/C Power would defend and indemnify it from certain liabilities, including the claims asserted against BATO in the Underlying Lawsuit.

35.     BATO's Standard Terms and Conditions, which formed part of the Agreement, further required that D/C Power provide proof of certain levels of liability insurance coverage. The Agreement also required that D/C Power name BATO as an Additional Insured under those policies of insurance.  (*See* BATO Terms and Conditions ¶ 22 ("All insurance required by this Contract other than worker's compensation insurance shall name Buyer as an additional insured or loss payee, as applicable.")).

36.     Under the Agreement, D/C Power agreed that BATO should be an Additional Insured under its insurance policies for claims arising out of the Project.

37.     Pursuant to the requirements of its Agreement with BATO, D/C Power provided BATO with a Certificate of Liability Insurance, which represented that BATO was an Additional Insured with respect to D/C Power's commercial general liability insurance coverage.

38.     D/C Power further represented that such liability insurance had been issued by Defendant.  This policy included both Commercial General Liability and Umbrella coverages, under Policy No. S-1990658 (the "Policy").

39.     BATO was made an "Additional Insured" under the Policy, by endorsement specifically naming it and by a Blanket Additional Insureds provision, with regard to liability insurance coverage for the claims asserted against it in the Underlying Lawsuit.

40.     D/C Power's counsel in the Underlying Lawsuit was retained by D/C Power's insurer, Defendant Selective Way Insurance Company.  That retained defense counsel provided the November 9, 2021 written tender of defense and indemnity to the claim representative for Defendant Selective Way Insurance Company.  No denial of coverage, reservation of rights, or other written response was made by Selective Way Insurance to that tender of defense.

{01228217.DOCX.2 }

41.     On January10, 2022, counsel for BATO sent additional written communication to Selective Way Insurance Company's retained counsel for D/C Power, repeating the tender of defense and indemnity.  That written tender was provided to Selective Way Insurance Company's claim representative by their retained counsel.  No denial of coverage, reservation of rights, or other written response was made by Selective Way Insurance to that tender of defense.

42.     To date, although BATO is an Additional Insured under the Policy, Defendant has failed to defend and indemnify BATO for the claims asserted against it in the Underlying Lawsuit.

43.     The plaintiff in the Underlying Lawsuit has made a demand to settle the claims against both BATO and D/C Power in the Underlying Lawsuit for an amount within the limits of coverage under the Policy. Defendant Selective Way has not made a good faith attempt to settle those claims.

## FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

44.     BATO repeats and realleges all allegations contained hereinabove, as if fully set forth herein verbatim.

45.     D/C Power executed a written Agreement under which it expressly promised to include BATO as an Additional Insured under the Policy.

46.     Defendant issued Additional Insured endorsements under the governing provisions of the Policy which apply to BATO and make BATO an Additional Insured.

47.     The Policy requires that Defendant defend and indemnify BATO for the claims asserted against it in the Underlying Lawsuit.

48.     BATO has fulfilled any obligations that it has under the Policy and has timely notified Defendant that it is entitled to coverage under the Policy.

49.     Defendant has refused to defend or indemnify BATO in the Underlying Lawsuit and has refused to resolve the claims against BATO in the Underlying Lawsuit for an amount within Policy limits.

{01228217.DOCX.2 }

50.    In connection with its handling of the Underlying Lawsuit, Defendant has breached its contractual obligations to BATO under the Policy.

51.    As a result of Defendant's breaches of its promises under the Policy, BATO has sustained (and will continue to sustain) injuries and damage, including (but not limited to): attorneys' fees incurred in defense of the Underlying Lawsuit and the risk of liability to the plaintiff in the Underlying Lawsuit.

52.    By reason of all the foregoing, BATO is entitled to damages from Defendant as a result of the breach of BATO's rights under the Policy and applicable law.

## FOR A SECOND CAUSE OF ACTION
### (Bad Faith – *Tyger River* Doctrine)

53.    BATO repeats and realleges all allegations contained hereinabove, as if fully set forth herein verbatim.

54.    BATO is an Additional Insured under the Policy, by virtue of an endorsement specifically naming it as an Additional Insured and under the Policy's Blanket Additional Insureds provisions.

55.    Although the Policy applies to provide coverage to BATO for the claims in the Underlying Lawsuit, Defendant has refused in bad faith to fulfill its contractual obligations.

56.    Defendant does not have a good faith basis for refusing to provide coverage to BATO under the Policy.

57.    Because of Defendant's bad faith refusal to defend BATO in the Underlying Lawsuit, BATO has been forced to incur significant attorneys' fees and other expenses in the defense of the Underlying Lawsuit.

58.    Under South Carolina law, Defendant is required to sacrifice its interests in favor of those of its Additional Insured BATO, when a conflict of interest as to settlement arises.

59.    The plaintiff in the Underlying Lawsuit has made a demand to settle his claims against both BATO and D/C Power for an amount within Policy limits.

60.    Defendant has refused, in bad faith, to accept this offer of settlement and has

{01228217.DOCX.2 }

generally refused to indemnify BATO for the claims against it in the Underlying Lawsuit.

61.    Defendant's handling of the claim against BATO in the Underlying Lawsuit and its breach of the Policy was unreasonable and done in bad faith.

62.    As a result of the foregoing, BATO is entitled to an award of actual, consequential and punitive damages, together with attorney's fees.

## FOR A THIRD CAUSE OF ACTION
### (Declaratory Judgment)

63.    BATO repeats and realleges all allegations contained hereinabove, as if fully set forth herein verbatim.

64.    The Policy contains express and enforceable language providing that BATO is an Additional Insured under the Policy, either in an endorsement naming BATO or in its Blanket Additional Insureds provision.

65.    The claims alleged against BATO in the Underlying Lawsuit fall within the coverage provided by the Policy.

66.    BATO seeks a declaration that, under the Policy language, Defendant is contractually obligated to defend and indemnify BATO for the claims asserted against it in the Underlying Lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bridgestone Americas Tire Operations, LLC requests the following relief, *inter alia:*

(a)    All damages it has sustained as a result of Defendant's conduct;

(b)    All costs and expenses incurred to date in the defense of the Underlying Lawsuit;

(c)    Any future costs and expenses incurred in the defense of the Underlying Lawsuit;

(d)    Indemnification for any liability to plaintiff in the Underlying Lawsuit;

(e)    Punitive damages;

{01228217.DOCX.2 }

(f)     Attorneys' fees;

(g)     A final judgment in its favor against Defendant, declaring that Defendant is contractually obligated to defend and indemnify BATO as an Additional Insured under the Policy for the claims asserted against BATO in the Underlying Lawsuit; and

(h)     Any other relief this Court deems just and appropriate under the circumstances.


BARNWELL WHALEY PATTERSON & HELMS, LLC

By: s/ John W. Fletcher
David S. Cox  (Fed ID 6041)
John W. Fletcher  (Fed ID ____)
211 King Street, Suite 300
Charleston SC 29401
(843) 577-7700

*Attorneys for Plaintiff*
*Bridgestone Americas Tire Operations, LLC*

January 18, 2023
Charleston, South Carolina

{01228217.DOCX.2 }